**SO ORDERED.**

**SIGNED this 23 day of June, 2016.**

_Stephani W. Humrickhouse_
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| NICOLAOS P. SPIRAKIS MARY C. SPIRAKIS | 13-07462-8-SWH |
| DEBTORS | |

### ORDER ALLOWING OBJECTION TO CLAIM

The matter before the court is the debtors' objection to the secured portion of the proof of claim filed by Georgia Spiliotis ("Ms. Spiliotis"). A hearing was held on May 18, 2016, in Wilmington, North Carolina.

### BACKGROUND

The debtors filed the instant chapter 11 petition on December 3, 2013. On the petition date, the male debtor, Nicolaos Spirakis ("Mr. Spirakis"), owned a fifty percent membership interest in the Learning Foundation of Wilmington, a North Carolina Partnership (the "Partnership"). Ms. Spiliotis owned the other fifty percent interest in the Partnership. Pursuant to a Partnership Agreement between Mr. Spirakis and Ms. Spiliotis, in the event of death of either partner, the surviving partner would have the option to purchase the interest of the deceased partner at a pre-

established price.[1]  The terms of such purchase are further elaborated in a Partnership Buy-Sell Agreement ("Buy-Sell Agreement") executed by Mr. Spirakis and Ms. Spiliotis.[2]  The Buy-Sell Agreement also provides, as a condition precedent to its enforcement, for the purchase of real property owned individually by Mr. Spirakis and Ms. Spiliotis located at 3801 and 3805 Wilshire Boulevard in Wilmington, North Carolina ("Wilshire Properties").  On October 14, 2014, Mr. Spirakis died, triggering the provisions of the Partnership Agreement and the Buy-Sell Agreement and obligating Mr. Spirakis' estate to sell his interest in the Partnership and in the Wilshire Properties in the event that Ms. Spiliotis sought to purchase the same.

On January 16, 2015, Ms. Spiliotis filed a proof of claim in the amount of $1,000,000.00 based upon Mr. Spirakis' alleged breach of fiduciary duty and negligent misrepresentation.  Ms. Spiliotis asserts that her claim is secured in the amount of $70,000.00 by virtue of a right of setoff.[3]  On March 5, 2015, the Partnership and Ms. Spiliotis filed a motion for relief from the automatic stay in order to implement the Buy-Sell Agreement.  The court, by order dated April 30, 2015, modified the stay for the limited purpose of allowing the Partnership and Ms. Spiliotis to enforce and implement the Buy-Sell Agreement by tendering payment to the debtors' counsel, to be held in trust,

---

[1]"If any partner should die while this contract of partnership is in force, the interest of such deceased partner may be purchased by the surviving partner at the price which has been pre-established . . . ."  Debtors' Objection to Claim, Doc. No. 270 at 1.

[2]In pertinent part, the Buy-Sell Agreement provides that "[u]pon a Partner's death or at such time as a Partner becomes disabled, the Partnership may purchase from the Partner, or his estate, and such Partner, or his estate, shall sell to the Partnership . . . all of the interest or units he then owns."  Debtors' Objection to Claim, Doc. No. 270 at 2.

[3]Also on January 16, 2015, Ms. Spiliotis filed a motion to intervene in an adversary proceeding initiated by the debtors against Bank of North Carolina, alleging that Mr. Spirakis breached his fiduciary duty to the Partnership and to Ms. Spiliotis and negligently misrepresented certain facts relating to deeds of trust encumbering the Wilshire Properties.

in exchange for the Wilshire Properties and Mr. Spirakis' interest in the Partnership. Subsequently, and pursuant to the Buy-Sell Agreement, Ms. Spiliotis made a payment of $70,000.00 to the debtors' counsel, which is currently being held in trust by debtors' counsel. Ms. Spiliotis asserts a security interest in that $70,000.00 by virtue of her right of setoff.

On February 16, 2016, the debtors filed an objection to the alleged secured portion of Ms. Spiliotis' claim. The debtors contend that the requirements for setoff have not been satisfied. Specifically, they maintain that Ms. Spiliotis' debt to Mr. Spirakis arose post-petition, rather than pre-petition, that mutuality of the claims is lacking, and that Ms. Spiliotis' claim against Mr. Spirakis is not valid or enforceable.

### DISCUSSION

Pursuant to 11 U.S.C § 506, an allowed claim of a creditor that is subject to setoff under § 553 is a secured claim to the extent of the amount subject to setoff. § 506(a). Accordingly, the secured basis for Ms. Spiliotis' claim necessarily depends on the requirements for setoff having been satisfied.

The right of setoff is incorporated in § 553, which preserves the right of setoff to the extent that such a right is recognized by non-bankruptcy law. Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 18 (1995); Durham v. SMI Indus. Corp., 882 F.2d 881, 883 (4th Cir. 1989); Collier on Bankruptcy ¶ 553.01[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). North Carolina recognizes the right of setoff where mutual debts exist between the parties. Durham, 882 F.2d at 883; In re Ingersoll, 90 B.R. 168, 172 (Bankr. W.D.N.C. 1987); Coburn v. Carstarphen, 194 N.C. 368, 139 S.E. 596, 597 (1927). Such a right "only exists between the same parties, and in the same right." In re Bank of Sampson, 205 N.C. 333, 171 S.E. 436, 437 (1933) (quoting Adams v. Bank,

3

113 N.C. 332, 18 S.E. 513, 514 (1893)). In addition to showing availability of setoff under state law, § 553 provides certain requirements for setoff that must be satisfied as well:

> (1) The creditor holds a "claim" against the debtor that arose before the commencement of the case;
> (2) The creditor owes a "debt" to the debtor that also arose before the commencement of the case;
> (3) The claim and debt are "mutual"; and
> (4) The claim and debt are each valid and enforceable.

Collier ¶ 553.01[1]; see also Ivey v. Hunter Acquisitions, Inc. (In re Carolina Acoustical and Flooring, Inc.), 415 B.R. 186, 191 (Bankr. M.D.N.C. 2009). The points of contention involve whether Ms. Spiliotis owes a debt to the debtors that arose prior to the commencement of this case, whether the claims of Ms. Spiliotis and the debtors are mutual, and whether Ms. Spiliotis' claim against the debtors is valid and enforceable. The court turns first to whether Ms. Spiliotis' debt arose pre-petition.

The Bankruptcy Code defines "debt" as "liability on a claim." § 101(12). "Claim," in turn, is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(5). This language is construed broadly. In re Camellia Food Stores, Inc., 287 B.R. 52, 57 (Bankr. E.D. Va. 2002). In determining when a claim arose, courts within the Fourth Circuit apply the "conduct test." Grady v. A.H. Robins Co., Inc., 839 F.2d 198, 203 (4th Cir. 1988); Camellia, 287 B.R. at 57. Pursuant to this test, a claim exists if the conduct giving rise to the right to payment occurred pre-petition. Zeitler v. Martel (In re Zeitler), 255 B.R. 172, 177 (E.D.N.C. 1999). According to the plain definition of claim, a claim is not defeated by virtue of being contingent on the petition date. In re Stewart Foods, Inc., 64 F.3d 141, 144 (4th Cir. 1995). Similarly, the fact that the time for payment occurs post-petition on an obligation that exists on the

date of the bankruptcy filing does not render such a claim post-petition. Id. at 146. Rather, "[f]or setoff purposes, a debt arises when all transactions necessary for liability occur, regardless of whether the claim was contingent, unliquidated, or unmatured when the petition was filed." U.S. ex rel. Agric. Stabilization and Conservation Serv. v. Gerth, 991 F.2d 1428, 1433 (8th Cir. 1993).

The reasoning and analysis in Gerth is particularly instructive. Considering the law of contracts, the court in Gerth determined that the debt in question arose pre-petition, because the contracts at issue created mutual promises and obligations that bound the parties at the time of formation, rather than merely creating conditions precedent. Id. at 1432, 1434-35. The court noted that, while a promise is a reliable assurance of future performance, a condition merely makes one party's duty dependent upon performance by the other party. Id. at 1432. The pertinent terms in the contracts, including "must" and "agrees," demonstrated to the court that mutual promises were at play rather than conditions. Id.

This court notes several important distinctions between the contracts at issue in Gerth and the agreements between Mr. Spirakis and Ms. Spiliotis. For one, neither the Partnership Agreement nor the Buy-Sell Agreement created an *obligation* on behalf of the surviving partner to purchase the decedent partner's interest. Even if some sort of obligation was created, the agreements did not determine the obligor – both Mr. Spirakis and Ms. Spiliotis were alive as of the petition date, and either partner could have passed away first, triggering the buy-sell provisions. As of the petition date, it was just as likely that Mr. Spirakis would be the surviving partner and choose to enforce the buy-sell provisions. In such case, Mr. Spirakis would have owed the very debt to Ms. Spiliotis' estate that she now owes to the estate of Mr. Spirakis. Additionally, even upon Mr. Spirakis' death, Ms. Spiliotis had to affirmatively decide whether to exercise her rights under the buy-sell provision,

and then had to actually take action to do so; there was no automatic obligation on her behalf. Ms. Spiliotis could have declined to exercise her buyout rights, as she had no obligation to purchase Mr. Spirakis' interests; she merely had the *option* to do so. See In re Lehman Bros. Holdings Inc., 404 B.R. 752, 759 (Bankr. S.D.N.Y. 2009) (transfer of funds subject to a right to reverse or amend the transfer was a conditional transfer, and since cancellation period terminated post-petition, it was a post-petition claim).

It is apparent to the court that there were no mutual promises between Mr. Spirakis and Ms. Spiliotis with regard to the survivor's purchase of Partnership interests and the Wilshire Properties, as not all transactions necessary for liability occurred pre-petition. Instead, the surviving partner's obligation to pay for the interests was completely dependent upon the survivor's decision to exercise its buyout rights. Accordingly, the debt was not absolutely owed pre-petition. See Gerth, 991 F.2d at 1435 (in contrast to the instant matter, case involved mutual promises, so debt was owed and arose pre-petition). Because the court has determined that one of the necessary elements of setoff under § 553 cannot be satisfied, Ms. Spiliotis is not entitled to a right of setoff, and further, does not possess a secured claim. The court need not address the other requirements of § 553. The debtors' objection to claim is hereby **GRANTED**.

**END OF DOCUMENT**